IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| LaSHUNDRA BRADLEY, Individually and as Special Administrator of the Estate of Anthony Corey Bradley, Deceased<br>PLAINTIFF | § | |
| vs. | § | Civil Action No. 4:21CV04046-SOH<br>(Jury Demand) |
| MILLER COUNTY, ARKANSAS; CITY OF TEXARKANA, ARKANSAS; SOUTHERN HEALTH PARTNERS, INC.; STEVEN KING, Individually; STEVEN FOLTZ, Individually; CHELSEY FOSTER, Individually; LONI REDFEARN, Individually; CASEY POWELL, Individually; CASEY BROWN, Individually; ALAN MOORE, Individually; CHANCE PATTERSON, Individually; JEFFIE WALKER, Individually; JOHN DOES 1-10; and JANE DOES 1-10, Individually<br>DEFENDANTS | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff LaShundra Bradley, Individually and as Special Administrator of the Estate of Anthony Corey Bradley, deceased, by and through the undersigned counsel, and files this Original Complaint against Defendants Miller County, Arkansas; City of Texarkana, Arkansas; Southern Health Partners, Inc.; Steven King, Individually; Steven Foltz, Individually; Chelsey Foster, Individually; Loni Redfearn, Individually; Casey Powell, Individually; Casey Brown, Individually; Alan Moore; Individually; Chance Patterson, Individually; Jeffie Walker, Individually; John Does 1-10; and Jane Does 1-10, Individually, and in support thereof would respectfully show unto the Court as follows:

## INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 and state law claims arising from events that occurred during the confinement of Anthony Corey Bradley, deceased ("Bradley") at the Miller County Detention Center ("MCDC") in Texarkana, Miller County, Arkansas. The MCDC is run by Defendant Miller County, Arkansas. Defendant Southern Health Partners, Inc. ("SHP") is a for-profit corporation, which provides medical services to county jails, including the MCDC. Defendants caused the death of Anthony Corey Bradley by flagrantly violating his rights under both the Eighth and Fourteenth Amendments to the United States Constitution, the Arkansas Civil Rights Act and common law.

2. Defendants' unconstitutional actions include failing to monitor and treat Bradley's life-threatening medical needs; failing to conduct face to face observations of Bradley as required by state minimum jail standards; failing to administer prescribed medications to Bradley; failing to transport Bradley to the hospital; forcing Bradley to endure extreme and pointless pain and suffering; and causing Bradley's death, thereby robbing his surviving family members of their relationship with him.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over Plaintiff's civil rights claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4. This Court has personal jurisdiction over each of the named defendants because they either (1) reside in this judicial district, or (2) have sufficient minimum contacts in the state of Arkansas, and the exercise of personal jurisdiction would not offend traditional notions of fair play

and substantial justice.

5. Venue is proper in this jurisdiction, under 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and/or because all defendants are subject to this Court's personal jurisdiction in this action.

## PARTIES

### A. Plaintiff

6. Plaintiff LaShundra Bradley is a citizen of the United States and resident of Texarkana, Miller County, Arkansas. She is the surviving spouse of the decedent, Anthony Corey Bradley. She is also the court-appointed Special Administrator of the Estate of Anthony Corey Bradley, which was duly formed under Arkansas state law. She is the Plaintiff in her individual capacity and in her representative capacity as the Administrator of her husband's estate. In her representative capacity, she is pursuing this action for the benefit of all eligible statutory beneficiaries, including herself, Bradley's parents, children and siblings. These beneficiaries include TaKe'shia Nashay King, Eleisia Nicole Collins, Shanecia Hayden, Alexia Jefferson, Leon Bradley, Jr., Minnie Louise Bradley, Deena Annette Morine, Lisa Michelle Johnson, Javonyee La'Keisha Bradley, Kawonna La'Shae Bradley, and Jermetric De'Earl Bradley.

### B. Municipal Defendants

7. Defendant Miller County is a governmental entity and a political subdivision of the state of Arkansas and is a "person" for purposes of 42 U.S.C. § 1983. Miller County is responsible for operating the MCDC. All MCDC detainees are entitled to constitutional protections under the Eighth and Fourteenth Amendments, including the right to constitutionally adequate medical care.

Defendant Miller County has a non-delegable duty to ensure that the MCDC meets constitutional mandates. Defendant Miller County may be served process through Miller County Judge Cathy Hardin Harrison, Miller County Courthouse, 400 Laurel Street, Suite 115, Texarkana, Arkansas 71854.

8. At all material times, Defendant Miller County contracted with a private, for-profit correctional medicine corporation, known as Southern Health Partners, Inc. ("SHP") to provide medical care to the MCDC's population of pretrial detainees and post-conviction prisoners. Although Defendant Miller County sought to privatize the provision of medical services, it cannot contract-away its constitutional obligations and is liable for any unconstitutional corporate customs or policies that resulted in harm to any detainees and inmates confined in the MCDC.

9. Defendant City of Texarkana, Arkansas ("City") is a governmental entity and a political subdivision of the state of Arkansas, and is a "person" for purposes of 42 U.S.C. § 1983. Defendant City routinely arrests and brings detainees such as Anthony Corey Bradley to the MCDC for pretrial detention and post-conviction sentencing. Defendant City has a non-delegable duty to ensure the MCDC satisfies its constitutional duties to citizens in its custody. Defendant City may be served with process through Mayor Allen Brown, City of Texarkana, Arkansas, 216 Walnut Street, Texarkana, Arkansas 71854. Defendant City benefits from and is liable for any unconstitutional corporate customs or policies that resulted in harm to any detainee or inmate confined in the MCDC.

C. <u>Corporate Defendant</u>

10. Defendant Southern Health Partners, Inc. ("SHP") is a Delaware corporation with its principal place of business in Chattanooga, Tennessee. Defendant SHP does business in this jurisdiction for purposes of profit. Defendant SHP is considered a "person" under 42 U.S.C. § 1983.

SHP manages the day-to-day medical service operations of the MCDC. Defendant SHP is a final policymaker for Defendant Miller County for purposes of providing medical services and meeting the needs of its pretrial detainees and convicted inmates of the MCDC. Defendant SHP may be served with process through its registered agent, CT Corporation System, 124 Capitol Avenue, Suite 1900, Little Rock, Arkansas 72201. At all material times, Defendant SHP was acting under color of state law. Regardless of its place of residence, the allegations against Defendant SHP arise from its actions in the state of Arkansas and in this judicial district.

D. Individual Defendants

11. Defendant Steven King was, at all material times relevant to this Complaint, a Registered Nurse at the MCDC and an employee of Defendant SHP. Defendant King was responsible for providing medical care to inmates and detainees, including Anthony Corey Bradley, and supervising other on-site medical staff. Defendant King is considered a "person" under 42 U.S.C. § 1983. At all material times Defendant King was acting under color of state law. Regardless of Defendant King's place of residence, the allegations against him arise from actions in the state of Arkansas and in this judicial district. Defendant King may be served with process at the Miller County Detention Center, 2300 East Street, Texarkana, Arkansas 71854.

12. Defendant Steven Foltz was, at all material times relevant to this Complaint, a Nurse Practioner at the MCDC, an employee and/or agent of Defendant SHP, and a policymaker at the MCDC concerning medical care provided to detainees. Defendant Foltz was responsible for providing medical care to inmates and detainees, including Anthony Corey Bradley, as well as supervising the MCDC nursing staff. Defendant Foltz is considered a "person" under 42 U.S.C. § 1983. At all material times Defendant Foltz was acting under color of state law. Regardless of

Defendant Foltz's place of residence, the allegations against him arise from actions in the state of Arkansas and in this judicial district. Defendant Foltz may be served with process the Miller County Detention Center, 2300 East Street, Texarkana, Arkansas 71854.

13. Defendant Chelsey Foster was, at all material times relevant to this Complaint, a Licenced Vocational Nurse at the MCDC and an employee of Defendant SHP. Defendant Foster was responsible for providing medical care to inmates and detainees, including Anthony Corey Bradley. Defendant Foster is considered a "person" under 42 U.S.C. § 1983. At all material times Defendant Foster was acting under color of state law. Regardless of Defendant Foster's place of residence, the allegations against her arise from actions in the state of Arkansas and in this judicial district. Defendant Foster may be served with process at the Miller County Detention Center, 2300 East Street, Texarkana, Arkansas 71854.

14. Defendant Loni Redfearn was, at all material times relevant to this Complaint, a Licensed Practical Nurse at the MCDC and an employee of Defendant SHP. Defendant Redfearn was responsible for providing medical care to inmates and detainees, including Anthony Corey Bradley. Defendant Redfearn is considered a "person" under 42 U.S.C. § 1983. At all material times Defendant Redfearn was acting under color of state law. Regardless of Defendant Redfearn's place of residence, the allegations against her arise from actions in the state of Arkansas and in this judicial district. Defendant Redfearn may be served with process at the Miller County Detention Center, 2300 East Street, Texarkana, Arkansas 71854.

15. Defendant Casey Powell was, at all material times relevant to this Complaint, a correctional officer at the MCDC and an employee of Defendant Miller County. Defendant Powell was responsible for monitoring detainees and complying will all state, local and federal laws

concerning the holding of detainees. Defendant Powell is considered a "person" under 42 U.S.C. § 1983. At all material times Defendant Powell was acting under color of state law. Regardless of Defendant Powell's place of residence, the allegations against him arise from actions in the state of Arkansas and in this judicial district. Defendant Powell may be served with process at the Miller County Detention Center, 2300 East Street, Texarkana, Arkansas 71854.

16. Defendant Casey Brown was, at all material times relevant to this Complaint, a correctional officer, staff supervisor and policymaker at the MCDC, and an employee of Defendant Miller County. Defendant Brown was responsible for monitoring detainees and complying will all state, local and federal laws concerning the holding of detainees. Defendant Brown is considered a "person" under 42 U.S.C. § 1983. At all material times Defendant Brown was acting under color of state law. Regardless of Defendant Brown's place of residence, the allegations against him arise from actions in the state of Arkansas and in this judicial district. Defendant Brown may be served with process at the Miller County Detention Center, 2300 East Street, Texarkana, Arkansas 71854.

17. Defendant Alan Moore was, at all material times relevant to this Complaint, a correctional officer at the MCDC and an employee of Defendant Miller County. Defendant Moore was responsible for monitoring detainees and complying will all state, local and federal laws concerning the holding of detainees. Defendant Moore is considered a "person" under 42 U.S.C. § 1983. At all material times Defendant Moore was acting under color of state law. Regardless of Defendant Moore's place of residence, the allegations against him arise from actions in the state of Arkansas and in this judicial district. Defendant Moore may be served with process at the Miller County Detention Center, 2300 East Street, Texarkana, Arkansas 71854.

18. Defendant Chance Patterson was, at all material times relevant to this Complaint, a

shift supervisor and policymaker at the MCDC and an employee of Defendant Miller County. Defendant Patterson was responsible for monitoring detainees and complying will all state, local and federal laws concerning the holding of detainees. Defendant Patterson is considered a "person" under 42 U.S.C. § 1983. At all material times Defendant Patterson was acting under color of state law. Regardless of Defendant Patterson's place of residence, the allegations against him arise from actions in the state of Arkansas and in this judicial district. Defendant Patterson may be served with process at the Miller County Detention Center, 2300 East Street, Texarkana, Arkansas 71854.

19. Defendant Jeffie Walker was, at all material times relevant to this Complaint, the Warden and policymaker at the MCDC and an employee of Defendant Miller County. Defendant Walker was responsible for the overall operation of the MCDC, including the supervision and training of correctional and medical staff. Defendant Walker is considered a "person" under 42 U.S.C. § 1983. At all material times Defendant Walker was acting under color of state law. Regardless of Defendant Walker's place of residence, the allegations against her arise from actions in the state of Arkansas and in this judicial district. Defendant Walker may be served with process at the Miller County Detention Center, 2300 East Street, Texarkana, Arkansas 71854.

20. Defendants John Does 1-10 are male employees, agents or representatives of Defendants Miller County or SHP who worked at the MCDC during the period when Bradley was incarcerated. Plaintiff reserves the right to amend the Complaint to reflect the identities of Defendants John Does 1-10 as same become known.

21. Defendants Jane Does 1-10 are female employees, agents or representatives of Defendants Miller County or SHP who worked at the MCDC during the period when Bradley was incarcerated. Plaintiff reserves the right to amend the Complaint to reflect the identities of

Defendants Jane Does 1-10 as same become known.

22. Each Defendant, including John Does 1-10 and Jane Does 1-10, were at all material times operating under color of state law.

## FACTUAL ALLEGATIONS

A. Facts Applicable to All Defendants

23. The Municipal and Corporate Defendants are responsible for the day-to-day management of the MCDC. Defendant SHP was, at all material times, responsible for delivery of medical services to detainees held at the MCDC.

24. Bradley was arrested by the Texarkana, Arkansas Police Department ("TAPD") on the night of July 5, 2018, on a warrant for a probation violation (failure to pay child support). Bradley was, in fact, current on his child support obligation, but had certain fees outstanding with the court.

25. Bradley was transported by TAPD to the MCDC. He was booked into the jail at approximately 12:10 a.m. on July 6, 2018, and placed in a holding cell in Receiving & Delivery ("R&D").

26. When he was booked in, Bradley was questioned by a correctional officer, at which time he complained of stomach and low back pain and informed jail staff that he suffered from hypertension and acid reflux.

27. Bradley, who was 47 years of age at the time, had been prescribed Benazepril HCL 20mg for his hypertension and Omeprazole 20 mg for his acid reflux. Bradley did not have his medications on his person at the time of his arrest and transport to the MCDC.

28. By 6:30 a.m. on July 6, 2018, Bradley requested he be provided with shoes, as he had

sores on his feet. Bradley was seen by Defendant Steven King, a registered nurse and Medical Team Administrator of Defendant SHP, at the request of Sgt. Jason Guthrie. Defendant King noted that Bradley had "obvious sores" on Bradley's hands and feet and authorized Bradley's use of shoes while housed in the jail. No additional medical assessment or treatment was provided to Bradley by Defendant King.

29. Subsequently, on the afternoon of July 6, 2018, Bradley was seen by Defendant Chelsey Foster, a licensed vocational nurse employed by Defendant SHP, at the MCDC. Defendant Foster conducted an intake interview and performed a history/physical examination of Bradley as part of the medical screening process. Defendant Foster noted the hands and sores on Bradley's feet and recorded his blood pressure as 143/86. Bradley could not remember the names of the medications he took for high blood pressure and acid reflux, but he executed a release of information so the medications could be identified through his pharmacy. Bradley also executed a Patient's Consent for Treatment form and requested his medications. Defendant Foster apparently did not consult anyone else in the medical department about securing Bradley's medications sooner rather than later, or prescribing him medications for his blood pressure and acid reflux.

30. Defendant King, who was an administrator and supervising nurse, was fully aware of Bradley's needs for the medications, as the two exchanged words over the topic. Defendant King, who exercises no disciplinary authority over detainees at the MCDC, placed Bradley in a maximum security cell as a disciplinary measure, rather than assisting Bradley in securing his much needed medications. By so doing, Defendant King acted with deliberate indifference to Bradley's serious medical needs. Bradley never received any medications before his death on July 8, 2018.

31. At approximately 11:00 a.m. on July 6, 2018, Bradley telephoned his wife, Plaintiff

LaShundra Bradley, and informed her that his blood pressure was high, but that medical staff would not give him any medication. He asked his wife to have his medications brought to the jail.

32. On July 7, 2018, Bradley was taken to the medical department at approximately 2:45 p.m. Defendant Foster His blood pressure was taken by Defendant Foster, who recorded it as 153/92. Bradley asked Defendant Foster if he could have his medications. She told him they were not there yet. Bradley knew he needed his medications and informed Defendant Foster that he could call someone to bring them to the MCDC. Defendant Foster fully understood the importance of Bradley receiving his medications and allowed Bradley to make a telephone call. He called a family member and his medications (Benazepril HCL 20mg for his hypertension and Omeprazole 20 mg for acid reflux) were brought to the jail by his daughter. However, Bradley never received his medications. SHP staff would subsequently describe the failure to deliver Bradley his medications as due to "a breakdown in communication."

33. At approximately 8:00 p.m. on July 7, 2018, Bradley, who still had not received his medications, became more ill. Shortly after being placed in Cell ME 11 and just after lights out, Bradley began reporting to cell mates that he was "tight and hurting." He got down off his bunk and started vomiting, and eventually dry heaving. Bradley informed his cell mates that he was sick and needed his medications.

34. Cell mate Clay Moten began banging on the cell door to summon help. He also tried to activate the call button in ME 11. The cell button had not worked for months, and was the subject of detainee grievances long before Bradley's incarceration. Neither Defendants Miller County nor SHP took steps to repair the cell button.

35. Mote informed detainees in the next cell to activate their call button to summon help

for Bradley. Even after that was done, and detainees in both cells began banging on doors, no correctional or medical staff appeared for several hours. During these hours Bradley's condition deteriorated further. He was laying on the floor, covered in sweat and vomit.

36. It was not until 4:20 a.m. on July 8, 2018, that Correctional Officer Casey Powell finally looked into the cell after the banging got his attention. Moten informed Powell that Bradley had been complaining of stomach pain, vomiting blood, and laying on the floor for hours. Powell informed Shift Supervisor Casey Brown, who came to the cell. Upon looking at Bradley, it was obvious to Supervisor Brown (a lay person) that Bradley was in pain. On information and belief, there was no medical staff on duty at the MCDC. Supervisor Brown had Bradley moved to holding cell 3 in R&D, which serves as a medical observation cell. Thus, at 4:20 a.m. on July 8, 2018, correctional staff had determined Bradley was in need of medical observation. There was simply no medical staff present to observe, assess or treat Bradley.

37. Because Bradley was placed in a "medical observation" cell, state laws and MCDC policy required staff to conduct face to face observations of Bradley every thirty (30) minutes.[1] Again, his medications were literally in the building, but neither correctional nor medical staff took any steps to retrieve and administer Bradley's medications to him as his condition spiraled downward. Jail staff made the conscious decision not to transport Bradley to the hospital, or even provide him with his medications. Nurses at the MCDC serve as "gatekeepers" for detainees to receive medical care from more qualified providers. No lab work was ordered for Bradley's symptoms (except non-emergency lab work for Bradley's foot and hand sores).

---

1 Prior to moving Bradley to the medical observation cell, Arkansas minimum jail standards required observation checks at least every 60 minutes.

38. Bradley's breakfast was brought to the cell at 6:23 a.m. on July 8, 2018, but he could not eat in light of his rapidly deteriorating condition. There is no indication in the jail records that any medical staff provided any assessment of or treatment to Bradley between the afternoon of July 7th and the afternoon of July 8th. At the end of the night shift, Supervisor Brown emailed jail administrators at 7:38 a.m. informing them that Bradley had been put in medical observation. Still no medical personnel were dispatched to observe, assess or treat Bradley.

39. According to Defendant SHP internal emails, jail staff did not inform medical staff of Bradley's deteriorating condition. In other words, it appears that Bradley spent hours in "medical observation" but there was no medical staff present to observe him. Thus, the entire morning of July 8, 2018, Bradley was not observed, assessed or treated by any medical staff - because there was no medical staff present.

40. On information and belief, the first medical staff to arrive at the MCDC on July 8, 2018, was Defendant Loni Redfearn, who clocked in at 10:38 a.m. Defendant Redfearn apparently failed to conduct any rounds upon her arrival or she would have seen that Bradley was in a medical observation cell and desperately ill. Likewise, Defendant Redfearn undertook no steps to locate and provide Bradley's medications to him.

41. At approximately 1:30 p.m. Bradley was taken by correctional staff rom his medical observation cell to the medical department. Defendant Moore and other correctional officers found Bradley leaning against a counter and having difficulty breathing. The officers attempted to calm him down and hold him up until he was put in a wheelchair and rolled to the nurses' office. Defendant Redfearn attempted to take his blood pressure, but could not secure a reading. After giving Bradley water, a blood pressure of 142/92 was measured. Even after recording Bradley's blood pressure as

high, Defendant Redfearn took no steps to locate Bradley's medications and provide them to him. She also failed to secure new prescriptions for Bradley's high blood pressure and acid reflux. She also failed to order lab work.

42. It had become even more clear that Bradley needed advanced medical care before Defendant Redfearn saw him on July 8, 2018. Multiple correctional officers noticed Bradley was dizzy and required two correctional officers to hold him up on the way to see Defendant Redfearn. Moreover, day shift supervisor Cpl. Chance Patterson was among the correctional staff who noticed Bradley "stammering around" before he was seen by Defendant Redfearn. Yet Defendant Redfearn either failed to pick upon on those symptoms (even though lay persons found them obvious) or chose to ignore them. Bradley was simply returned to his cell, once again without his medications that were sitting nearby.

43. Bradley never received his medications, and the duodenal ulcer that had been causing his symptoms ruptured. He was found unresponsive in his cell shortly before 5:00 p.m. on July 8, 2018. Lifesaving efforts were undertaken, but Bradley was pronounced. Dead his body was transported to the Arkansas State Crime Lab. An autopsy revealed that Bradley died from acute peritonitis due to a ruptured duodenal ulcer.

44. The correctional staff failed to meet minimum jail standards on July 8, 2018, which contributed to Bradley's death. Arkansas state minimum detention facility standards require that the MCDC maintain "audio contact with all inmates, either in person or by means of electronic monitoring devices, at all times." The same standards require jail personnel to visually check each detainee "at no more than 60-minute intervals on an irregular basis...". Each check should be recorded. Once Bradley was placed in medical observation at approximately 4:30 a.m. on July 8,

2018, those minimum standards and Defendant SHP's internal procedures required observations at no more than 30-minute intervals.

45. As noted above, on the morning on July 8, 2018, it took several hours for jail staff to respond to multiple detainees in two different cells attempting to contact guards by banging on the doors and activating the call buttons. Failure to maintain a working call button in each cell constitutes a violation of the minimum standards. Moreover, once video footage of the area was compared to jail observation records, it was determined that jail staff, including Defendants Powell and Moore, did not conduct visual observations of Bradley as required by law. Even worse, jail records falsely indicate that the required observation checks were timely made throughout the day, even when they were not conducted. Had the call buttons been functioning and staff complying with minimum standards, Bradley's condition would have been discovered much sooner and he could have been transported off site for lifesaving medical treatment. Of course, none of this occurred.

46. Defendant SHP, through its employees and agents, also failed to comply with state minimum detention center standards. Arkansas Criminal Detention Facility Standards provides as follows:

> All medication prescribed for an inmate shall be administered in accordance with the instructions of the designated health authority. A complete record shall be retained in the inmate's file of all medication prescribed. A complete record of all medications administered to inmates shall be kept, and where possible, the inmate shall acknowledge the receipt of medication by signature or initial. All medication shall be kept in a locked storage area. Medication administration will be the responsibility of the Chief Executive or his designee. No inmate shall be allowed to administer medications to another inmate.

As noted above, Bradley's medications were brought to the jail before he became violently ill. Defendants failed to comply with state minimum jail standards because they had possession of

Bradley's lifesaving medications, and took no steps to administer that medication, keep the appropriate records, or store the medication in the designated location. Defendants also failed to provide medical staff at the MCDC during the night of July 7th and morning hours of July 8th.

47. Defendants King and Foltz supervised the nursing staff and were responsible for supervising and training staff concerning their delivery of medical services at the MCDC.

48. Defendants Brown and Patterson were the correctional shift supervisors on July 7-8, 2018, and were responsible for supervising and training correctional officers on duty, including Defendants Powell and Moore.

49. Defendant Walker was, at all material times, the warden of the MCDC. She was responsible for training and supervising all correctional and medical staff and for MCDC's compliance with all laws and regulations concerning housing and provision of medical services to detainees.

B. <u>Additional Facts Applicable to Municipal and Corporate Defendants</u>

50. The unconstitutional conduct in question was carried out in accordance with the official policies, procedures, practices, and customs of Defendant SHP.

51. Defendants SHP and Miller County engaged in and permitted to exist a pattern, practice or custom of unconstitutional conduct towards detainees and inmates with serious medical needs, including denying prescription medication and failing to secure medical care for such individuals. Before (and since) Bradley's detention, there have been numerous instances in the MCDC (and in other correctional facilities managed by SHP) of inmates being denied medications and deprived of needed medical care by Defendant SHP and its agents or employees, resulting in disability and/or death.

52. Defendants SHP, King, Foltz, Foster and Redfearn were negligent in failing to properly monitor Bradley; in failing to properly assess, treat and secure outside treatment for his serious medical condition; in failing to administer Bradley's prescribed medications; and in failing to transport Bradley to a hospital for proper treatment of his condition.

53. Defendants SHP, King and Foltz negligently failed to provide proper training to and supervision of the MCDC correctional and medical staff, including Defendants Foster and Redfearn.

54. Defendant SHP negligently failed to provide proper training to and supervision of Defendants King, Foltz, Foster and Redfearn in the appropriate manner of operating and overseeing the MCDC, as demonstrated said Defendants' failure to ensure that nursing staff understood how to follow detainee observation procedures and medical protocols so as to avoid unnecessary death.

55. Defendants had a duty to Bradley to ensure that he received medical attention and that he was not exposed to undue risk of harm or injury.

56. The breaches of Defendants' duties described above were actual and proximate causes of Bradley's death, which occurred only because of the breaches of their duties by the Defendants.

57. Defendant SHP also failed to train its jail nursing staff on how to recognize and respond to the serious medical needs of inmates; follow healthcare protocols; monitor inmates in medical observation cells; conduct medical examinations in accordance with basic standards of care; notify qualified providers of abnormal findings; consult with and involve medical doctors in patient care; correctly maintain and review medical charts; and contact emergency services in a timely fashion. The need for this training was obvious, particularly in the MCDC, because there is no doctor on site and because the jail utilizes lower-level nurses (LVNs and LPNs) in inmate-patient care. Indeed, despite their limited scope of license, these LVNs/LPNs are often the only ones providing

healthcare at the MCDC.

58. It was foreseeable that the training and supervision deficiencies outlined above would cause harm to inmates and detainees, such as Bradley.

59. In addition to its inadequate training, Defendant SHP inadequately staffed the MCDC. Staffing shortages play a role in nurses failing to check vital signs and disregarding time-consuming medical protocols. Insufficient staffing practices at the MCDC and other SHP-run facilities caused harm to multiple inmates and detainees in the years leading up to Bradley's confinement, and such practices played a substantial role in his suffering and death.

60. One of the most glaring systemic deficiencies is Defendant SHP's medical observation policy, which is plainly unconstitutional as implemented. When Defendant SHP identifies an inmate with serious medical needs, the corporate policy is to place the inmate in a medical observation cell. In theory, this is appropriate. However, when Bradley was placed in medical observation, zero medical monitoring took place. Instead, correctional officers with no medical training or experience are put in charge of monitoring him. And their so-called medical monitoring consists of guards quickly peeking in the cells - often while walking by without stopping. They are not trained to look for abnormal signs or symptoms, ask questions of the inmates, carefully examine them, or document any observations. These practices predictably caused harm to a number of detainees, including Bradley, and played a role in his death.

61. Additionally, Defendant SHP has a longstanding practice of poor medical record-keeping and miscommunication among jail medical providers. This has been a major problem at the MCDC - where medical records are routinely lost, and communication breakdowns are commonplace. Lower-level nurses often fail to convey important information about patient-inmate

care needs to one another and to higher-level providers. These practices predictably put inmates at substantial risk of serious harm. They, in fact, contributed to negative outcomes for multiple inmates, and they played a substantial role in Bradley's constitutionally deficient care.

62. As was the case with other inmates who died or were injured in SHP-run facilities, the failure to secure needed medical care for Bradley was motivated, in part, by constitutionally impermissible profit-driven reasons. This included hiring inexperienced and lower-level nurses and failing to invest in adequate training. It also included spending inadequate amounts on correctional medical care and understaffing its facilities. It was foreseeable that Defendant SHP's inadequate training, insufficient medical spending, and understaffing would cause harm to inmates and detainees in need of medical care. In fact, these reckless profit-driven practices resulted in substantial harm to multiple inmates in the years leading up to Bradley's confinement, and these same unconstitutional practices caused his unnecessary suffering and death.

63. Defendant SHP had a duty to treat Bradley in accordance with the applicable constitutional standards of medical and correctional care. Defendant SHP breached those duties, and Bradley's damages, including his pain and suffering and his death, were the direct and foreseeable result of the unconstitutional actions and inactions alleged herein.

64. The corporate policies, practices, and customs of Defendant SHP described above were the moving force behind Bradley's suffering and death and the constitutional violations alleged herein. Defendant SHP also ratified the unconstitutional conduct of its employees and agents in connection with the death of Bradley. Defendant SHP policymakers were aware of his condition and participated in the decision not to take him to the hospital until it was too late.

65. All acts and omissions committed by Defendant SHP were committed with intent,

malice, deliberate indifference, and/or with reckless disregard for Bradley's federal constitutional rights, and the acts of and omissions of Defendant SHP caused the damages alleged herein.

66. Moreover, the conditions in which Defendant SHP confined Bradley were inhumane in the extreme, beyond all bounds of human decency, and in flagrant violation of his constitutional rights. Housing Bradley in such deplorable conditions was arbitrary, purposeless, and bore no reasonable relationship to any legitimate penological or government objective.

67. Defendant Miller County delegated its final policy-making authority to Defendant SHP. Despite this, Defendant Miller County had a continuing duty to ensure that its corporate policymaker was meeting the constitutional needs of its detainees. Defendant Miller County adopted and ratified the policies, customs, and practices of Defendant SHP as its own. As such, Defendant Miller County is liable for any unconstitutional corporate policies, customs, or practices that resulted in harm to any detainees and inmates confined in the MCDC, including those that caused the suffering and death of Bradley. It was foreseeable that such policies, customs, and practices would put the lives of MCDC detainees at risk, and such policies and customs caused and/or substantially contributed to the suffering and death of Bradley.

68. Defendant Miller County has adopted and ratified the policies, customs and practices of failing to meet minimum jail standards, including untimely observation checks; failing to maintain call buttons in proper working order; and otherwise failing comply with minimum jail standards. Moreover, the conditions in which Defendant SHP confined Bradley were inhumane in the extreme, beyond all bounds of human decency, and in flagrant violation of his constitutional rights. Housing Bradley in such deplorable conditions was arbitrary, purposeless, and bore no reasonable relationship to any legitimate penological or government objective.

## CAUSES OF ACTION

A. Against Corporate Defendant

1. 42 U.S.C. 1983

69. Based on the allegations in this complaint, the Defendant SHP is liable under 42 U.S.C. § 1983 for violating the Bradley's rights under the Eighth and Fourteenth Amendments to the United States Constitution. This includes depriving Bradley of his constitutional rights to adequate medical care and to be housed in humane conditions of confinement, as well as depriving his surviving family members of their constitutional liberty interest in their relationship and their society and companionship with him. The same deprivations entitle Plaintiff to recovery under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 et seq.

2. Wrongful Death and Survival

70. Based on the allegations in this complaint, the Defendant SHP is liable for tortiously causing the death and pre-death pain and suffering of Bradley by violating the applicable correctional and medical standards of care.

B. Against Defendants Miller County and City of Texarkana, Arkansas

71. Based on the allegations in this complaint, Defendants Miller County and the City of Texarkana, Arkansas are liable under 42 U.S.C. § 1983 for violating the Bradley's rights under the Eighth and Fourteenth Amendments to the United States Constitution. This includes depriving Bradley of his constitutional rights to adequate medical care and to be housed in humane conditions of confinement, as well as depriving his surviving family members of their constitutional liberty interest in their relationship and their society and companionship with him. The same deprivations

entitle Plaintiff to recovery under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 et seq.

C. Against Individual Defendants

1. 28 U.S.C. 1983

72. Based on the allegations in this complaint, Individual Defendants King, Foltz, Foster, Redfearn, Powell, Brown, Moore, Patterson, Walker, John Does 1-10 and Jane Does 1-10 are liable under 42 U.S.C. § 1983 for violating the Bradley's rights under the Eighth and Fourteenth Amendments to the United States Constitution. This includes depriving Bradley of his constitutional rights to adequate medical care and monitoring, and to be housed in humane conditions of confinement, as well as depriving his surviving family members of their constitutional liberty interest in their relationship and their society and companionship with him. The same deprivations entitle Plaintiff to recovery under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 et seq.

73. Individual liability under 42 U.S.C. § 1983 also extends to Defendants King, Foltz, Brown and Walker for their failure to train and supervise their subordinates and ensure compliance with correctional and medical standards of care as described in this complaint.

74. All acts and omissions committed by Individual Defendants King, Foltz, Foster, Redfearn, Powell, Brown, Moore, Patterson, Walker, John Does 1-10 and Jane Does 1-10 were committed with intent, malice, deliberate indifference, and/or with reckless disregard for Bradley's federal constitutional rights. And the acts of and omissions of Individual Defendants King, Foltz, Foster, Redfearn, Powell, Brown, Moore, Patterson, Walker, John Does 1-10 and Jane Does 1-10 caused the damages alleged herein.

75. Based on the allegations set forth in this complaint, Individual Defendants King, Foltz, Foster, Redfearn, Powell, Brown, Moore, Patterson, Walker, John Does 1-10 and Jane Does 1-10 are liable for tortiously causing the death and pre-death pain and suffering of Bradley by violating the applicable correctional and medical standards of care, as well as the Arkansas Civil Rights Act of 1993 and Ark. Code Ann. § 16-123-101 et seq.

## JURY DEMAND

76. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

Plaintiff respectfully asks that the Court award the following relief:

a. all available compensatory damages, including, but not limited to: damages to Anthony Corey Bradley for his mental and physical pain and suffering and the loss of the value of his life; medical and burial expenses; damages to his statutory wrongful death beneficiaries for their loss of society and companionship, loss of love and affection, loss of financial support, loss of household services, and loss of care, comfort, and guidance; mental and emotional anguish; and all compensatory damages available under federal law;

b. punitive damages against all the Corporate and Individual and Defendants;

c. attorneys' fees and costs;

d. prejudgment interest as appropriate; and

e. any such other relief that this Court deems just and equitable.

July 6, 2021

Respectfully submitted,

/s/ W. David Carter
W. David Carter, ASB 85025
MERCY ✯ CARTER, L.L.P.
1724 Galleria Oaks Drive
Texarkana, Texas 75503
(903) 794-9419 - Telephone
(903) 794-1268 - Facsimile
wdcarter@texarkanalawyers.com

ATTORNEYS FOR PLAINTIFF LASHUNDRA BRADLEY, INDIVIDUALLY AND AS SPECIAL ADMINISTRATOR OF THE ESTATE OF ANTHONY COREY BRADLEY, DECEASED